IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| SAMUEL ST. JAMES, | ) | CIVIL 16-00529 LEK-KSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JP MORGAN CHASE BANK | ) | |
| CORPORATION, ETC., ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS
JP MORGAN CHASE BANK, N.A.; WELLS FARGO BANK, N.A.;
CALIFORNIA RECONVEYANCE COMPANY; AND U.S. BANK NATIONAL
ASSOCIATION'S "MOTION TO DISMISS [10] FIRST AMENDED COMPLAINT";
AND GRANTING DEFENDANT DEBORAH BRIGNAC'S "MOTION TO DISMISS
[ECF NO. 10] FIRST AMENDED COMPLAINT FILED OCTOBER 24, 2016"**

On November 14, 2016, Defendants JP Morgan Chase Bank,

N.A. ("JP Morgan"); Wells Fargo Bank, N.A. ("Wells Fargo");

California Reconveyance Company ("CRC"); U.S. Bank National

Association, as Trustee, Successor in Interest to Wachovia Bank,

National Association, as Trustee, for Merrill Lynch Mortgage

Investors Inc. Mortgage Pass-through Certificates, Series MLMI

2005-A5 ("U.S. Bank," collectively "Bank Defendants") filed their

"Motion to Dismiss [10] First Amended Complaint" ("Bank Motion").

[Dkt. no. 14.]  On February 24, 2017, Defendant Deborah Brignac

("Brignac") filed her "Motion to Dismiss [ECF No. 10] First

Amended Complaint Filed October 24, 2016" ("Brignac Motion").

[Dkt. no. 32.]  Pro se Plaintiff Samuel St. James ("Plaintiff")

filed his response to the Bank Motion on February 13, 2017, and

the Bank Defendants filed their reply on February 17, 2017.
[Dkt. nos. 25, 27.]  Plaintiff did not respond to the Brignac
Motion.  On July 31, 2017, this Court ordered Plaintiff to file a
supplemental memorandum and allowed any defendant to file a
response.  [Dkt. no. 39.]  Plaintiff filed his supplemental
memorandum on August 28, 2017, and the Bank Defendants and
Brignac filed a joint position statement on September 6, 2017.
[Dkt. nos. 43, 44.]

The Court finds these matters suitable for disposition
without a hearing pursuant to Rule LR7.2(d) of the Local Rules of
Practice of the United States District Court for the District of
Hawai`i ("Local Rules").  The Bank Motion is hereby granted in
part and denied in part, and the Brignac Motion is hereby granted
in its entirety, for the reasons set forth below.

## BACKGROUND

Plaintiff filed his original Complaint on September 26,
2016.  [Dkt. no. 1.]  On October 24, 2016, Plaintiff filed his
First Amended Complaint, pursuant to Fed. R. Civ. P. 15(a)(1).
[Dkt. no. 10.]  This case arises from Plaintiff's unsuccessful
attempt to obtain a loan modification for the mortgage on his
home in San Diego, California ("the Property") under the Home
Affordable Modification Program ("HAMP").  [First Amended
Complaint at ¶¶ 2, 27, 36, 37, 84.]  According to Plaintiff,
during the loan modification process, his attorney worked with

JP Morgan to have Plaintiff placed in a HAMP three-month trial
period plan ("TPP").  The TPP, however, only reduced Plaintiff's
monthly mortgage payment by $79.00, and, sometime in June 2010,
JP Morgan denied him a permanent HAMP loan modification.  [Id. at
¶¶ 71-73.]

Plaintiff entered into his "mortgage loan contract
. . . on approximately 04/07/2005."  [Id. at ¶ 84 (quotation
marks omitted).]  According to Plaintiff, on May 2, 2005,
Washington Mutual Bank ("WaMu") assigned its interest in his loan
to the Merrill Lynch Mortgage Investors Inc. Mortgage Pass-
Through Certificates, Series MLMI 2005-A5, Trust ("Merrill
Lynch").  [Id. at ¶ 53(A).]  Plaintiff states that WaMu was his
"personal bank," but it had "changed over to" JP Morgan by June
2009.  [Id. at ¶ 58.]  Apparently, while Plaintiff was attempting
to secure the loan modification from JP Morgan, he received a
notice from Brignac, CRC's vice president, of a trustee's
foreclosure sale scheduled for August 27, 2009.  He alleges that
Brignac robo-signed the notice.[1]  [Id. at ¶ 61.]  Plaintiff
alleges that, because of the assignment to Merrill Lynch, neither

---

[1] Plaintiff alleges the "practice of repeated false
attestation of information in affidavits is popularly known as
'robosigning.'  Where third parties engaged in 'robosigning' on
behalf of the Banks, they did so with the knowledge and approval
of the Banks."  [First Amended Complaint at ¶ 43.d.]  "The Banks"
refers to JP Morgan, Wells Fargo, Defendant Washington Mutual
Holding, Inc. ("WMHI"), and U.S. Bank.  [Id. at ¶ 26.]

CRC[2] nor JP Morgan was the legal trustee of the Property, and neither held any ownership interest in the Property.  Thus, he contends that they did not have any authority to foreclose on the Property.  [Id. at ¶ 43.d.]

In 2010, Plaintiff filed suit in the United States District Court for the Southern District of California against JP Morgan and CRC, Civil Number 10-01893 IEG-NLS ("California Case").  The purpose of the California Case was to halt the foreclosure of the Property, which had been Plaintiff's home since 2001.  Plaintiff filed his first amended complaint in the California Case on October 1, 2010.  [Id. at ¶¶ 82-83.] According to Plaintiff, the district court in the California Case granted a motion to dismiss the case because the district court "believed [JP Morgan] had bought and did own [Plaintiff's] home as an asset from WaMu."  [Id. at ¶ 88.]  Plaintiff alleges that JP Morgan accomplished this through a fraud upon the court. [Id.]

Plaintiff later relocated to Hawai`i "because of fear of Foreclosure."  [Id. at ¶ 27.]  Plaintiff entered into bankruptcy proceedings in the United States Bankruptcy Court for the District of Hawai`i, In re Samuel St. James, et al., Case No. 13-00138 ("Bankruptcy Case").  He alleges that fraud by

_____

[2] According to Plaintiff, CRC "was listed as Trustee for" JP Morgan.  [First Amended Complaint at ¶ 13 (emphasis omitted).]

JP Morgan and U.S. Bank in the Bankruptcy Case resulted in the illegal foreclosure of his home by U.S. Bank in 2015.  [Id. at ¶ 18.]

Plaintiff alleges the following claims: a fraud claim against the Bank Defendants, Brignac, and WMHI[3] based on misrepresentations in the loan modification process ("Count I"); [id. at ¶¶ 48-69;] a breach of contract against JP Morgan based upon its alleged failure to comply with the TPP agreement ("Count II"); [id. at ¶¶ 70-80;] a fraud claim against JP Morgan, Wells Fargo, and CRC based on misrepresentations in the California Case ("Count III"); [id. at ¶¶ 81-90;] an unclean hands claim against the Bank Defendants and Defendant Alaw[4] based on their alleged actions and omissions related to the Bankruptcy Case ("Count IV"); [id. at ¶¶ 91-111;] violation of the California Unfair Competition Law, Business and Professions Code § 17200, et seq., and other Hawai`i and California consumer protection laws, against the Bank Defendants and Alaw ("Count V"); [id. at ¶¶ 112-18;] a claim against the Bank

---

[3] According to the First Amended Complaint, Defendant Washington Mutual Bank, FSB ("WMB") reorganized in bankruptcy to WMHI in 2012.  [First Amended Complaint at ¶ 10.]  Although both WMHI and WMB are named as defendants in this case, there is no evidence in the record that Plaintiff completed service upon either entity.

[4] Plaintiff identifies Alaw as the "successor to, 'CRC', by purchase from" JP Morgan.  [First Amended Complaint at ¶ 14.]  There is no evidence in the record that Plaintiff has completed service upon Alaw.

Defendants seeking to set aside or vacate the sale of his home and to have title restored to him ("Count VI"); [id. at ¶¶ 119-26;] and intentional infliction of emotional distress ("IIED") against all of the defendants ("Count VII"), [id. at ¶¶ 127-42].

Plaintiff prays for, *inter alia*: general, special, compensatory, statutory, exemplary, and punitive damages; attorneys' fees and costs; an order voiding the assignment of Plaintiff's mortgage; restitution and disgorgement; prejudgment interest; an order requiring that the Property be reconveyed to him; an order voiding any document signed by Plaintiff in connection with his mortgage loan; an injunction against future violations of the statutes cited in the First Amended Complaint; and any other appropriate relief. [Id. at pgs. 101-02.]

The Bank Defendants and Brignac seek dismissal of the First Amended Complaint with prejudice for lack of subject matter jurisdiction and because the claims against them are all time barred. In addition, the Brignac Motion contends that Plaintiff's claims against her are not sufficiently pled.

## DISCUSSION

### I.  Jurisdiction

The Bank Defendants first argue that this Court does not have jurisdiction over the claims in Plaintiff's First Amended Complaint. This district court has stated:

> "Federal courts are courts of limited
> jurisdiction," possessing "only that power

6

authorized by Constitution and statute." <u>United States v. Marks</u>, 530 F.3d 799, 810 (9th Cir. 2008) (quoting <u>Kokkonen v. Guardian Life Ins. Co.</u>, 511 U.S. 375, 377 (1994)). At the pleading stage, a plaintiff must allege sufficient facts to show a proper basis for the Court to assert subject matter jurisdiction over the action. <u>McNutt v. Gen. Motors Acceptance Corp.</u>, 298 U.S. 178, 189 (1936); <u>Johnson v. Columbia Props. Anchorage, L.P.</u>, 437 F.3d 894, 899 (9th Cir. 2006); Fed. R. Civ. P. 8(a)(1).

In general, a plaintiff may establish subject matter jurisdiction in one of two ways. First, he may assert "federal question jurisdiction," based on allegations that a defendant violated the Constitution, a federal law, or treaty of the United States. <u>See</u> 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The United States Supreme Court has recognized that a "plaintiff properly invokes § 1331 jurisdiction" by pleading "a colorable claim 'arising' under the Constitution or laws of the United States." <u>Arbaugh v. Y & H Corp.</u>, 546 U.S. 500, 513 (2006). Second, a plaintiff may invoke the court's "diversity jurisdiction," which applies "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). In order to establish diversity jurisdiction, a plaintiff must establish complete diversity of the parties. <u>See</u> <u>Morris v. Princess Cruises, Inc.</u>, 236 F.3d 1061, 1067 (9th Cir. 2001) (explaining that § 1332(a) "requires complete diversity of citizenship; each of the plaintiffs must be a citizen of a different state than each of the defendants"). [The plaintiff] has the burden of establishing this Court's subject matter jurisdiction. <u>See</u> <u>Thompson v. McCombe</u>, 99 F.3d 352, 353 (9th Cir. 1996) ("A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction."). . .

<u>Sameshima v. United States</u>, CIVIL NO. 15-00422 DKW-BMK, 2015 WL
6453104, at *2 (D. Hawai`i Oct. 23, 2015) (some alterations in
<u>Sameshima</u>).

Plaintiff asserts federal question jurisdiction based
on: 12 U.S.C. §§ 2603 and 2614, which are part of the Real Estate
Settlement Procedures Act ("RESPA"); interstate banking laws and
regulations; and bankruptcy law. [First Amended Complaint at
¶ 18.] However, Plaintiff's claims are not based upon any of
these – he asserts claims arising under California law and
Hawai`i law. Plaintiff has not asserted a colorable claim
arising under either RESPA, banking laws and regulations, or
bankruptcy law. The First Amended Complaint's citation to these
federal authorities appears to be immaterial and made solely in
an attempt to obtain federal jurisdiction. <u>See</u> <u>Flores v. Rodham</u>
<u>Clinton</u>, CIVIL NO. 16-00573 DKW-KJM, 2016 WL 6542708, at *5 (D.
Hawai`i Nov. 3, 2016) ("A claim is not colorable if: (1) the
alleged claim under the Constitution or federal statutes appears
to be immaterial and made solely for the purpose of obtaining
jurisdiction; or (2) such a claim is wholly insubstantial and
frivolous." (citing <u>Bell v. Hood</u>, 327 U.S. 678, 682 (1946))).
The First Amended Complaint therefore fails to "allege sufficient
facts to show a proper basis for the Court to assert" federal
question jurisdiction over this case. <u>See</u> <u>McNutt</u>, 298 U.S. at
189.

The First Amended Complaint does not assert jurisdiction based on diversity. However, because Plaintiff is proceeding pro se, this Court liberally construes the First Amended Complaint as asserting diversity jurisdiction. See, e.g., Eldridge v. Block, 832 F.2d 1132, 1137 (9th Cir. 1987) ("The Supreme Court has instructed the federal courts to liberally construe the 'inartful pleading' of pro se litigants." (citing Boag v. MacDougall, 454 U.S. 364, 365, 102 S. Ct. 700, 701, 70 L. Ed. 2d 551 (1982) (per curiam))). Plaintiff does not clearly allege the amount in controversy, but he is seeking the return of the Property, which he lost in foreclosure, and the First Amended Complaint alleges that the Property was worth more than $75,000. See First Amended Complaint at ¶ 56 (describing a notice he received on May 21, 2009 regarding his mortgage, which stated that JP Morgan was his "Lender of $417,000.00"). This Court therefore concludes that the First Amended Complaint satisfies the amount in controversy requirement for diversity jurisdiction.

Plaintiff must also allege that there is complete diversity of citizenship, i.e., that he is a citizen of a different state from each of the defendants. See Morris, 236 F.3d at, 1067. Plaintiff asserts that, "at all relevant times [he] was a citizen of the United States and a resident of the state of California and Hawaii." [First Amended Complaint at

pg. 2.]  He also alleges that: JP Morgan is a national banking association with its headquarters in Columbus, Ohio; [<u>id.</u> at ¶ 9;] and Wells Fargo is a national banking association and a subsidiary of Wells Fargo & Company, which is a Delaware corporation with its headquarters in California [<u>id.</u> at ¶ 11]. He does not allege the citizenship of U.S. Bank – which is a national banking association, CRC, or Brignac.  [<u>Id.</u> at ¶¶ 12-13, 15.]

"For diversity purposes, a national association is a citizen of the state where its main office is located."  <u>Lopez v. JPMorgan Chase Bank, N.A.</u>, Case No. SACV 15-02030 JVS (JCGx), 2016 WL 320105, at *2 (C.D. Cal. Jan. 25, 2016) (citing <u>Wachovia Bank, N.A. v. Schmidt</u>, 546 U.S. 303 (2006)).  The First Amended Complaint alleges that JP Morgan is a citizen of Ohio, but there are insufficient factual allegations to determine the citizenship of the other defendants who have appeared in this case.  Further, there are insufficient factual allegations to determine the citizenship of the defendants who have not appeared.  The First Amended Complaint therefore fails to allege sufficient facts to show a basis for diversity jurisdiction in this case.  Because Plaintiff has failed to allege a sufficient basis for either federal question jurisdiction or diversity jurisdiction, this Court does not have subject matter jurisdiction over the claims in Plaintiff's First Amended Complaint.  The Bank Motion and the

Brignac Motion are granted insofar as the First Amended Complaint must be dismissed in its entirety.

However, "[u]nless it is absolutely clear that no amendment can cure the defect," in other words, unless amendment would be futile, "a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995). Based on the representations in Plaintiff's supplemental memorandum, this Court concludes that it is possible to for Plaintiff to cure the jurisdictional defect in the First Amended Complaint by amendment. This Court next turns to the issue of whether allowing Plaintiff to file a second amended compliant would be futile because his claims against the Bank Defendants and Brignac are time barred.

## II.  **Applicable Law**

Some of the events at issue in this case occurred in California, and some occurred in Hawai`i.[5] The First Amended Complaint appears to invoke both California law and Hawai`i law. See, e.g., First Amended Complaint at pg. 5. If Plaintiff can cure the jurisdictional defects in his complaint by pleading a

_____

[5] For purposes of the Bank Motion and the Brignac Motion (collectively "the Motions"), the factual allegations of the First Amended Complaint are assumed to be true. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 572 (2007) ("a judge ruling on a defendant's motion to dismiss a complaint must accept as true all of the factual allegations contained in the complaint" (citations and internal quotation marks omitted)).

basis for diversity jurisdiction, this Court would apply Hawai`i

substantive law, including the Hawai`i choice of law analysis.

See First Intercontinental Bank v. Ahn, 798 F.3d 1149, 1153 (9th

Cir. 2015).  The Hawai`i Supreme Court

> has "moved away from the traditional and rigid
> conflict-of-laws rules in favor of the modern
> trend towards a more flexible approach looking to
> the state with the most significant relationship
> to the parties and subject matter." Lewis v.
> Lewis, 69 Haw. 497, 499, 748 P.2d 1362, 1365
> (1988) (citing Peters [v. Peters], [63 Haw. 653,
> 660, 634 P.2d 586, 591 (1981)]).  This flexible
> approach places "[p]rimary emphasis . . . on
> deciding which state would have the strongest
> interest in seeing its laws applied to the
> particular case." Id.  Hence, this court has said
> that the interests of the states and applicable
> public policy reasons should determine whether
> Hawai`i law or another state's law should apply.
> See Peters, 63 Haw. at 667–68, 634 P.2d at 595.
> "The preferred analysis, [then] in our opinion,
> would be an assessment of the interests and policy
> factors involved with a purpose of arriving at a
> desirable result in each situation." Id. at 664,
> 634 P.2d at 593.

Mikelson v. United Servs. Auto. Ass'n, 107 Hawai`i 192, 198, 111

P.3d 601, 607 (2005) (some alterations in Mikelson).

Based on the allegations of the First Amended

Complaint,[6] and for purposes of the instant Motions only, this

_____

    [6] As a general rule, when a district court considers a
motion to dismiss, its review is limited to the allegations in
the complaint.  Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992,
998 (9th Cir. 2010).  Exhibits 34 to 39 are attached to
Plaintiff's First Amended Complaint, although the Exhibit List
attached to it refers to Exhibits (1) to (39).  On March 1, 2017,
Plaintiff filed a "Motion to Attach Exhibit(s) to the First
Amended Complaint Filed 10/24/2016" ("Exhibits Motion").  [Dkt.
                                              (continued...)

Court concludes that:

-California has the strongest interest in seeing its laws applied to Plaintiff's claims in Counts I, II, and III because those claims center around the loan modification process for the Property – which is located in California, Plaintiff was residing on the Property when the events giving rise to these claims occurred, and it appears from the factual allegations of the First Amended Complaint that the events giving rise to these claims occurred in California;

-Hawai`i has the strongest interest in seeing its laws applied to Plaintiff's claims in Count IV because the Bankruptcy Case was litigated in Hawai`i – where Plaintiff was residing at that time – and, to the extent that there were allegedly improper actions and omissions during the Bankruptcy Case, the bankruptcy court in Hawai`i and Plaintiff were most directly affected;

-California has the strongest interest in seeing its laws applied to the apparent wrongful foreclosure claim in Count VI, because, although Plaintiff ultimately lost the Property during the Bankruptcy Case, the factual allegations supporting Count VI arise from the noticed trustee's sale and the California Case that Plaintiff filed to try to stop the trustee's sale; and

-California has the strongest interest in seeing its laws applied to Plaintiff's claims in Count VII because the extreme emotional distress that Plaintiff relies upon – although he experienced the effects of the distress in Hawai`i – arose from having to move out of his home and the "ups and downs" of the loan modification process, [First Amended Complaint at ¶¶ 128, 131,] and those events occurred in California.

---

[6](...continued)
no. 36.] Plaintiff sought leave to file Exhibits (1) to (39), which he stated he forgot to attach when he filed the First Amended Complaint. On March 3, 2017, the magistrate judge denied the Exhibits Motion. [Dkt. no. 38.] Thus, only Exhibits 34 to 39 are properly before this Court. This Court can consider those exhibits without converting the motions into motions for summary judgment. See Magbual v. Fed. Nat'l Mortg. Ass'n, Civil No. 16-00428 HG-KSC, 2016 WL 7478958, at *3 (D. Hawai`i Dec. 29, 2016) (citing Lee v. City of L.A., 250 F.3d 668, 688 (9th Cir. 2001)).

Finally, Count V primarily cites California law, see, e.g., id. at pg. 84 (Count V is titled "California Unfair Competition Law (UCL), Business and Professions Code section 17200 et seq."), but Plaintiff also expressly alleges that JP Morgan and Wells Fargo "violate[d] Hawaii & California Consumer laws," [id. at ¶ 113]. This Court concludes, for purposes of the Motions only, that Count V must be liberally construed to allege both that the challenged conduct which occurred in California violated California consumer protection laws and the challenged conduct which occurred in Hawai`i violated Hawai`i consumer protection laws.

## III. **Time-Bar**

The Bank Defendants and Brignac argue that all of Plaintiff's claims against them are time barred.

### A. **Counts I and III (Fraud-Based Claims)**

Counts I and III allege fraudulent misrepresentations.

> Fraud claims are subject to a three-year statute of limitations period. Cal. Code Civ. Proc. § 338(d). "The cause of action in that case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." Id. This discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 807 (2005).

Long v. Authentic Athletix LLC, Case No.16-cv-03129-JSC, 2017 WL 1064988, at *8 (N.D. Cal. Mar. 20, 2017).

As noted by the Bank Defendants, Plaintiff knew by June 2010 that JP Morgan denied his application for a loan modification, and he knew that his loan payments were refused in June 2009.  <u>See, e.g.</u>, First Amended Complaint at ¶¶ 53, 73.  The Bank Defendants argue that Plaintiff "made demands based on the loan modification denial (and alleged representations regarding the denial) on July 9, 2010." [Mem. in Supp. of Bank Motion at 12-13.]  However, the First Amended Complaint merely alleges that Plaintiff, "in his log report, . . . dated July 09, 2010, he alleged the Trial Plan Agreement constituted a written contract, which [JP Morgan] breached by denying [Plaintiff] a permanent loan modification." [First Amended Complaint at ¶ 75.]  Although Plaintiff knew his application for a loan modification was denied, the factual allegations of the First Amended Complaint do not support the Bank Defendants' position that Plaintiff knew in 2010 that the denial was based on fraudulent misrepresentations.

Similarly, although Plaintiff knew in 2010 that the California Case was dismissed and he now alleges that the dismissal was based on fraudulent misrepresentations, [<u>id.</u> at ¶¶ 86-88,] the factual allegations of the First Amended Complaint do not support the Bank Defendants' position that Plaintiff knew in 2010 that the dismissal was based on fraudulent misrepresentations.  Further, Plaintiff alleges that: "Any applicable statutes of limitations have been tolled by the

Defendants' continuing, knowing, and active concealment of the facts and their fraudulent behavior as alleged herein." [Id. at ¶ 89.] In other words, Plaintiff alleges that the limitations period for his fraud claims did not accrue at the denial of the loan modification or the dismissal of the California Action because, did not know or have reason to know about the fraudulent misrepresentations which led to those events.

It is arguably possible for Plaintiff to plead sufficient facts that would support a reasonable inference that the limitations period for his fraud claims did not start until three years before he filed the instant case. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (citing Twombly, 550 U.S. at 556, 127 S. Ct. 1955)). Therefore, the Bank Defendants' argument that amendment of Counts I and III – and Brignac's argument that amendment of Count I – would be futile because those claims are time barred is rejected.

B.    Count II (Breach of Contract)

Under California law, breach of contract claims are generally subject to a four-year limitations period. Cal. Civ. Proc. Code § 337.1. Cal. Civ. Proc. Code § 336a states:

> Within six years. 1. An action upon any bonds,
> notes or debentures issued by any corporation or

pursuant to permit of the Commissioner of
Corporations, or upon any coupons issued with such
bonds, notes or debentures, if such bonds, notes
or debentures shall have been issued to or held by
the public.

2. An action upon any mortgage, trust deed or
other agreement pursuant to which such bonds,
notes or debentures were issued. Nothing in this
section shall apply to bonds or other evidences of
indebtedness of a public district or corporation.

Section 336a is inapplicable because the contract at issue in

Count II is not Plaintiff's mortgage itself, but the TPP

agreement. This Court therefore concludes that Count II is

subject to a four-year limitations period.

Count II alleges that JP Morgan breached the TPP

agreement by denying Plaintiff a permanent loan modification.

[First Amended Complaint at ¶ 75.] He alleges that, because JP

Morgan approved his TPP, he complied with the TPP, and all of his

representations in application were true and accurate, JP Morgan

was required to offer him a permanent loan modification under

HAMP guidelines. [Id. at ¶ 78.] As previously noted, Plaintiff

knew in June 2010 that his application was denied. This Court

finds that, even accepting all of the factual allegations of the

First Amended Complaint as true, Plaintiff knew or should have

known about the alleged breach of the TPP agreement when he knew

that his application was denied.[7] Plaintiff failed to bring his

---

[7] Plaintiff speculates about the motives behind JP Morgan's
actions and the part that his loan modification application
(continued...)

17

breach of contract claim within three years.

Count II fails to state a claim upon which relief can be granted because it is time barred.  See Fed. R. Civ. P. 12(b)(6).  Further, it is absolutely clear under the circumstances of this case that Plaintiff cannot cure this defect in Count II by amendment.  Therefore the Bank Motion is granted insofar as Count II is dismissed with prejudice.[8]

C.    **Count IV**

Plaintiff characterizes Count IV as asserting unclean hands.  See, e.g., First Amended Complaint at pg. 65 (title of Count IV).  The Bank Defendants characterize Count IV as an unfair and deceptive acts and practices ("UDAP") claim, under Haw. Rev. Stat. Chapter 480.  [Mem. in Supp. of Bank Motion at 8-9.]  However, Count IV alleges that the Bank Defendants and Alaw had unclean hands in the Bankruptcy Case because the fraud that JP Morgan and others committed both prior to and during the Bankruptcy Case.  See, e.g., First Amended Complaint at ¶ 94 (Plaintiff "was forced by [JP Morgan], to file Bankruptcy in an

---

[7](...continued)
played in a larger scheme.  See, e.g., First Amended Complaint at ¶ 76.  Even if Plaintiff did not know, and could not have known, about those facts at the time he learned his application was denied, it does not affect this Court's analysis.  Plaintiff's lack of knowledge about why JP Morgan allegedly breached the contract is irrelevant to the issue of when Plaintiff knew or should have known that the breach occurred in the first instance.

[8] Plaintiff does not bring Count II against Brignac.  [First Amended Complaint at pg. 49.]

18

effort to keep his home.  This [is] because [JP Morgan] had used

Fraud and Unclean hands in California . . . . to obtain a court

decision against [Plaintiff]." (emphases omitted)); id. at ¶ 96

(alleging that JP Morgan and U.S. Bank "using Unclean hands in

preparation, execution and notarization of fraudulent court

documents and records so as to be able to initiate and prosecute

improper foreclosure actions"); id. at ¶ 107 (alleging "Fraud on

the Court, and Unclean Hands, against the Court and" Plaintiff in

the Bankruptcy Case (emphasis omitted)).

Count IV, like Count III regarding the California Case,

alleges that the results in the Bankruptcy Case were obtained

through fraudulent representations.  This district court has

stated,

> under Hawaii law, "'[p]ersonal actions of any
> nature whatsoever not specifically covered by the
> laws of the State' have a limitations period of
> six years."  Hubbart v. State of Hawaii Office of
> Consumer Prot. Dep't of Commerce & Consumer
> Affairs, 2008 WL 373167, at *5 (D. Haw. Feb. 11,
> 2008) (citing Haw. Rev. Stat. § 657-1(4)). "Claims
> sounding in fraud, whether based on state or
> federal law, are governed by this six-year statute
> of limitations." Id. (citations omitted).

Jou v. Adalian, No. CV 15-00155 JMS-KJM, 2016 WL 4582042, at *19

(D. Hawai`i Sept. 1, 2016) (alteration in Jou).  Plaintiff

initiated the Bankruptcy Case in 2013.  [First Amended Complaint

at ¶ 18.]  Thus, to the extent that Count IV alleges fraudulent

representations in the Bankruptcy Case, Plaintiff brought

Count IV within the limitations period.  Therefore the Bank

Defendants' argument that amending Count IV is futile because the claim is time barred is rejected.

**D.** **Count V (Violation of Consumer Protection Laws)**

As previously stated, Count V alleges that the Bank Defendants' and Alaw's actions in California regarding Plaintiff's loan modification application and their actions during the California Case violated California consumer protection laws, in particular Cal. Bus. & Prof. Code § 17200, and their actions in the Bankruptcy Case violated Hawai`i consumer protection laws, *i.e.* Chapter 480.

First, Chapter 480 claims are subject to a four-year limitations period. Haw. Rev. Stat. § 480-24. Plaintiff initiated the Bankruptcy Case in 2013, and he brought this case in 2016. Thus, assuming that Plaintiff cures the jurisdictional defect discussed above, his Chapter 480 claims in Count V are timely.

Cal. Bus. & Prof. Code § 17200 claims are subject to a four-year limitations period. Cal. Bus. & Prof. Code § 17208. Such claims are "'governed by common law accrual rules to the same extent as any other statute,' such that 'the nature of the right sued upon and the circumstances attending its invocation control the point of accrual." Wolf v. Travolta, 167 F. Supp. 3d 1077, 1107 (C.D. Cal. 2016) (some internal quotation marks omitted) (quoting Aryeh v. Canon Bus. Sols., Inc., 55 Cal. 4th

1185, 1196, 151 Cal. Rptr. 3d 827, 292 P.3d 871 (2013)).  Based
on the factual allegations of the First Amended Complaint, it
does not appear that Plaintiff brought his § 17200 claims within
the four-year limitations period because Count V relies on the
same factual allegations as Counts I, II, III, and IV, see, e.g.,
First Amended Complaint at ¶ 118, and the alleged violations of
California consumer protection laws occurred in the course of the
loan modification process and the litigation of the California
Case.  As with Counts I and III, it is arguably possible for
Plaintiff to amend Count V to allege a basis for tolling of the
statute of limitations.  Therefore the Bank Defendants' argument
that amendment of Count V would be futile because it is time
barred is rejected.

     **E.**    **Count VI (Restoration of Title)**

       Count VI appears to be a wrongful foreclosure claim
alleging that the "trustee's sale" violated California law.  See,
e.g., First Amended Complaint at ¶ 121.  Specifically, Plaintiff
alleges that fraud in the loan modification process excused his
indebtedness and the trustee's sale violated Cal. Bus. & Prof.
Code §§ 17206 and 17206.1.  [Id. at ¶¶ 122, 124.]

       In Ancheta v. Mortgage Electronic Registration Systems,
Inc., which involved a wrongful foreclosure claim "based upon
allegations that the various documents recorded to effectuate the
foreclosure sale were recorded fraudulently and contrary to the

California non-judicial foreclosure statutes," the district court
concluded that the claim fell

> within the three-year limitations period set forth
> in California Code of Civil Procedure section 338.
> Under California law, "the nature of the right
> sued upon, not the form of action or the relief
> demanded, determines the applicability of the
> statute of limitations." <u>Jefferson v. J. E.</u>
> <u>French Co.</u>, 54 Cal. 2d 717, 718 (1960).
> Section 338 provides a three-year statute of
> limitations for a variety of claims, including:
> "[a]n action upon a liability created by statute,
> other than a penalty or forfeiture;" "[a]n action
> for trespass upon or injury to real property;"
> "[a]n action for relief on the ground of fraud or
> mistake;" and "slander of title to real property."
> Cal. Code. Civ. Proc. § 338 (a), (b), (d),
> (g). . . .

No. 16-CV-06520-YGR, 2017 WL 1164288, at *2 (N.D. Cal. Mar. 29,
2017) (some alterations in <u>Ancheta</u>).

Similarly, based on the factual allegations in
Count VI, the three-year statute of limitations set forth in
§ 338 applies.  The trustee's sale was originally noticed for
August 27, 2009.  [First Amended Complaint at ¶ 61.]  As
previously noted, Plaintiff filed the California Action in 2010
to stop the trustee's foreclosure sale.  Based on the factual
allegations of the First Amended Complaint, Plaintiff did not
bring his wrongful foreclosure claim within the three-year
limitations period.  It is arguably possible for Plaintiff to
amend Count VI to allege a basis for tolling of the statute of
limitations.  Therefore the Bank Defendants' argument that
amendment of Count VI would be futile because it is time barred

22

is rejected.

**F.   Count VII (IIED)**

Count VII alleges that Plaintiff "suffered intentional infliction of emotional distress, but suffered injury connected to the fraudulent and illegal foreclosure of his home when he was forced to move out." [Id. at ¶ 128.]  Plaintiff states that, in 2011, he and his family made the decision to move out of the Property before it was foreclosed upon, and they suffered the hardship of going through all of the steps necessary to move out and relocate to Hawai`i in February 2012.  [Id. at ¶¶ 132-33, 136.]  Count VII alleges that the defendants engaged in a "scheme of the Dual-Tracking, and Loan Modification scam," [id. at ¶ 130 (emphasis omitted),] which included alleged fraudulent misrepresentations made to him during the loan modification process, [id. at ¶ 131].

Under California law, an IIED claim is subject to a two-year statute of limitations.  Robles v. Agreserves, Inc., 158 F. Supp. 3d 952, 990 (E.D. Cal. 2016) (citing Cal. Code Civ. P. § 335.1; Pugliese v. Superior Ct., 146 Cal. App. 4th 1444, 1450, 53 Cal. Rptr. 3d 681 (2007)).  In IIED claim "accrues once plaintiff suffers severe emotional distress as a result of outrageous conduct on [the] part of [the] defendant." Leitner v. Sadhana Temple of New York, Inc., No. CV 13-07902 MMM (EX), 2014 WL 12588643, at *11 (C.D. Cal. Oct. 17, 2014) (some citations and

23

internal quotation marks omitted) (citing <u>Johnson v. Lucent</u>

<u>Technologies Inc.</u>, 653 F.3d 1000, 1008 (9th Cir. 2011) ("Under

California law, an IIED claim accrues 'when the harm is

inflicted'")).

> The elements of the tort of IIED are:
> (1) extreme and outrageous conduct by the
> defendant; (2) the defendant's intention of
> causing, or reckless disregard of the probability
> of causing, emotional distress; (3) the
> plaintiff's suffering severe or extreme emotional
> distress; and (4) actual and proximate causation
> of the emotional distress by the defendant's
> outrageous conduct. <u>Hughes v. Pair</u>, 46 Cal. 4th
> 1035, 1050, 95 Cal. Rptr. 3d 636, 209 P.3d 963
> (2009); <u>Potter v. Firestone Tire & Rubber Co.</u>, 6
> Cal. 4th 965, 1001, 25 Cal. Rptr. 2d 550, 863 P.2d
> 795 (1993). . . .

<u>Robles</u>, 158 F. Supp. 3d at 977.

Plaintiff alleges that he and his family were

effectively forced to move out of the Property because of the

threatened foreclosure and that this process caused him extreme

emotional distress.  Plaintiff and his family completed the move

in February 2012, and he alleges he injured his back, left ankle,

and right knee in the move.  By September 2012, Plaintiff was

only sleeping two to four hours per day because of his injuries

and because of panic and anxiety from the impending foreclosure.

His physical and mental condition continued to deteriorate

thereafter.  [First Amended Complaint at ¶¶ 137-41.]  He was

diagnosed with "Generalized Anxiety Disorder & Panic Disorder,

Chronic Pain Issues, and Social environment, Financial" on

July 23, 2013.  [Id. at ¶ 142.]  Even assuming the date of that
diagnosis is the date that Plaintiff suffered severe emotional
distress for purposes of his IIED claim, he failed to bring the
claim within two years of that date.

In 2010, Plaintiff already believed that the impending
trustee foreclosure sale was wrongful, as evidenced by the fact
that he filed the California Case.  However, the defendants'
allegedly outrageous conduct is based on more than their conduct
regarding Plaintiffs' loan.  See, e.g., First Amended Complaint
at ¶ 130 (alleging that the loan modification scheme "borderlines
on sinister as it was done to millions of people besides"
Plaintiff).  It may be possible for Plaintiff to cure the statute
of limitations defect in his IIED claim because the claim
arguably did not accrue until he knew or should have known that
his emotional distress was caused by defendants' **outrageous**
conduct.  Therefore the Bank Defendants' and Brignac's argument
that amendment of Count VII would be futile because it is time
barred is rejected.

**IV.  <u>Sufficiency of the Allegations Against Brignac</u>**

In addition to the jurisdiction and statute of
limitations arguments, Brignac argues that: Plaintiff's claims
against her do not allege a cognizable legal theory; and, even if
any claim does allege a cognizable legal theory, Plaintiff has
failed to plead sufficient factual allegations to support the

claim.

The only claims that Plaintiff brings against Brignac
are Counts I and VII.  Plaintiff alleges that Brignac robo-signed
a notice stating that JP Morgan was going to foreclose on the
Property on August 27, 2009.  [First Amended Complaint at
¶¶ 43.d, 61.]  He alleges that she attested to and signed
"documents that were flat out false, untrue, and misleading" and
which created "a huge cloud on the title of" the Property when
they were filed with the San Diego County Recorders' Office.
[Id. at ¶ 65.]  Plaintiff also alleges that Brignac's signatures
on two documents do not match.  [Id.]  Thus, Plaintiff alleges
that Brignac was "[p]art of the fraud that led to the
foreclosure" of the Property and that her "actual fraud . . .
rendered the foreclosure void."  [Id.]  Plaintiff alleges that
the Assignment of Deed of Trust, the substitution of trustee, and
the Notice of Default were all robo-signed, which he alleges
renders the sale void.  [Id.]  Specifically, Plaintiff alleges
that "Brignac signed that she was the Trustee for CRC, and CRC
thus had the right to foreclose on [Plaintiff], but Deborah
Brignac and CRC, was not the Trustee, Wachovia Bank was listed as
the legal Trustee.  Robo-Signed Fraud is what that is and was."
[Id.]  Count VII alleges that Brignac's actions inflicted
emotional and physical suffering upon him.  [Id. at ¶¶ 134, 142.]

Plaintiff's allegations that Brignac robo-signed documents stem from his theory that the assignment of his loan to JP Morgan was fraudulent, and therefore it could not foreclose upon the Property.  See, e.g., id. at ¶¶ 53, 71, 87.  California district courts have recognized that:

> In Yvanova v. New Century Mortg. Corp., 62 Cal. 4th 919 (2016), the California Supreme Court held that borrowers challenging an assignment of interest to the foreclosing entity lack standing to raise issues that would render the assignment voidable, but may assert challenges that, if successful, would render the assignment void.  62 Cal. 4th at 939, 942-43.

Golden v. JPMorgan Chase Bank, N.A., No. 16-CV-1209-BTM(JMA), 2017 WL 3582981, at *4 (S.D. Cal. Aug. 18, 2017).  For purposes of the Brignac Motion, Plaintiff's allegation that the Assignment of Deed of Trust, the substitution of trustee, and the Notice of Default were all robo-signed is assumed to be true.  However, even under those circumstances, the documents "'would be voidable, not void, at the injured party's option.'"  See Kalnoki v. First Am. Tr. Servicing Sols., LLC, 214 Cal. Rptr. 3d 292, 310 (Ct. App. 2017) (quoting Maynard v. Wells Fargo Bank, N.A., 2013 WL 4883202, at *8-9 (S.D. Cal. 2013)).  Brignac signed the documents on behalf of JP Morgan and CRC and, if her signatures on them were improper, those entities would be the injured parties, not Plaintiff.  See id.  Even if Brignac robo-signed the documents, JP Morgan and CRC ratified them by pursuing the foreclosure process against Plaintiff.  Further, Plaintiff does

not dispute the existence of his mortgage on the Property and that mortgage loan was in default.[9]  Thus, even accepting the accepting the factual allegations of the First Amended Complaint as true, Plaintiff has not pled sufficient facts to show that the robo-signed documents were void.

Because Plaintiff's fraud claim against Brignac is based on his robo-signing theory, it fails to state a plausible fraud claim.  See Iqbal, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting Twombly, 550 U.S. at 570, 127 S. Ct. 1955)).  Further, based on the circumstances of this case, it is absolutely clear that Plaintiff cannot cure this defect in his fraud claim against Brignac by amendment.

The allegedly extreme and outrageous conduct by Brignac that forms the basis of Plaintiff's IIED claim against her is the robo-signing of documents.  Plaintiff has not cited any case law holding that robo-signing constitutes the type of extreme and outrageous conduct necessary to support an IIED claim, and this Court is not aware of any.  Count VII therefore fails to state a

---

[9] This Court acknowledges that Plaintiff alleges that JP Morgan induced him to default on his loan by representing that he had to be delinquent in his mortgage payments to qualify for the HAMP program, [First Amended Complaint at ¶ 102,] however that factual allegation does not affect the robo-signing analysis.

plausible IIED claim against Brignac, and, under based on the circumstances of this case, it is absolutely clear that Plaintiff cannot cure this defect by amendment.

Thus, allowing Plaintiff to amend his claims against Brignac to cure the jurisdictional defect would be futile because he cannot cure the defects in his fraud claim and his IIED claim against her. The Brignac Motion is therefore granted insofar as Plaintiff's claims against Brignac in Count I and Count VII are dismissed with prejudice.[10]

## V. <u>Summary and Leave to Amend</u>

The First Amended Complaint is dismissed in its entirety, for lack of subject matter jurisdiction.[11] Further, both of Plaintiff's claims against Brignac are dismissed with prejudice. In other words, Plaintiff no longer has any claims against her in this case.

The Bank Motion is granted insofar as Count II is dismissed with prejudice. The Bank Motion is denied insofar as the dismissal of all of Plaintiff's other claims against the Bank Defendants is without prejudice. Plaintiff is granted permission to file a motion seeking leave to file a second amended complaint

---

[10] In light of this Court's rulings, it is not necessary to address Brignac's other arguments why Plaintiff's claims against her should be dismissed.

[11] This Court expresses no opinion about the merits of Plaintiff's claims that were not before this Court in the instant Motions.

("Motion for Leave"). Plaintiff must attach his proposed second amended complaint to the Motion for Leave. <u>See</u> Local Rule LR10.3 ("Any party filing or moving to file an amended complaint . . . shall reproduce the entire pleading as amended and may not incorporate any part of a prior pleading by reference, except with leave of court."). This Court ORDERS Plaintiff to file his Motion for Leave by **November 13, 2017**. The Motion for Leave will be referred to the magistrate judge.

Plaintiff is CAUTIONED that his proposed amended complaint must state **all of the claims that he alleged in the First Amended Complaint – except for those that have been dismissed with prejudice – as well as all of the facts and all of the legal theories that his remaining claims rely upon**. Plaintiff cannot rely upon or incorporate by reference any portion of his prior complaints. **This Court will not consider Plaintiff's second amended complaint collectively with his prior filings in this case**.

Plaintiff is CAUTIONED that, if he fails to file his Motion for Leave by **November 13, 2017**, the claims that this Court dismissed without prejudice in this Order will be dismissed with prejudice. Further, Plaintiff is CAUTIONED that, even if the magistrate judge grants his Motion for Leave and allows him to file his proposed second amended complaint, this Court may still dismiss the amended claims with prejudice if Plaintiff fails to

cure the defects identified in this Order.

**CONCLUSION**

On the basis of the foregoing, JP Morgan, Wells Fargo, CRC, and U.S. Bank's "Motion to Dismiss [10] First Amended Complaint," filed November 14, 2016, is HEREBY GRANTED IN PART AND DENIED IN PART, and Brignac's "Motion to Dismiss [ECF No. 10] First Amended Complaint Filed October 24, 2016," which Brignac filed on February 24, 2017, is HEREBY GRANTED.

Plaintiff's First Amended Complaint is DISMISSED, in its entirety, for lack of subject matter jurisdiction.  The Bank Motion is GRANTED insofar as: all of Plaintiff's claims against JP Morgan, Wells Fargo, CRC, and U.S. Bank are DISMISSED; and the dismissal of the claims against them in Count II is WITH PREJUDICE.  The Bank Motion is DENIED insofar as the dismissal of Plaintiff's claims against JP Morgan, Wells Fargo, CRC, and U.S. Bank in Count I, III, IV, V, VI, and VII is WITHOUT PREJUDICE.  Plaintiff may file a motion seeking leave to file a second amended complaint by **November 13, 2017**.  The Motion for Leave must comply with the terms of this Order.

The Brignac Motion is GRANTED insofar as Plaintiff's claims against Brignac in Counts I and VII are DISMISSED WITH PREJUDICE.  There being no remaining claims against her in this case, this Court DIRECTS the Clerk's Office to terminate Brignac as a defendant on **October 20, 2017**, unless Plaintiff files a

motion for reconsideration of this Order by **October 16, 2017.**

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, September 29, 2017.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

SAMUEL ST. JAMES VS. JP MORGAN CHASE BANK, ET AL; CIVIL 16-00529
LEK-KSC; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS JP
MORGAN CHASE BANK, N.A.; WELLS FARGO BANK, N.A.; CALIFORNIA
RECONVEYANCE COMPANY; AND U.S. BANK NATIONAL ASSOCIATION'S
"MOTION TO DISMISS [10] FIRST AMENDED COMPLAINT"; AND GRANTING
DEFENDANT DEBORAH BRIGNAC'S "MOTION TO DISMISS [ECF NO. 10] FIRST
AMENDED COMPLAINT FILED OCTOBER 25, 2016"